

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

ENTERED
09/01/2016

| | | |
|---|---|---|
| IN RE: | § | |
| JULIO CESAR RAYGOZA; aka JULIO | § | CASE NO: 15-10377 |
| RAYGOZA; aka JULIO C. RAYGOZA | § | |
|     Debtor | § | |
| | § | |
| | § | CHAPTER  13 |

**MEMORANDUM OPINION**
**SUSTAINING, IN PART, AND DENYING, IN PART,**
**DEBTOR'S OBJECTION TO**
**NOTICE OF POSTPETITION MORTGAGE FEES, EXPENSES, AND CHARGES**
**OF PLAINS CAPITAL BANK**
*[Resolving ECF No. 81]*

## I.    Introduction

Who would have imagined that reasonable minds could differ about the interpretation of a single word, to wit: "incurred".  Yet, that interpretation is largely the turning point in this case. PlainsCapital Bank ("***PCB***"), a secured creditor, brought its Notice of Post-Petition Mortgage Fees, Expenses, and Charges seeking, in part, $505.80 in attorney's fees for work completed from November 6, 2015, through November 20, 2015, and $825.00 in attorney's fees for preparing and filing a proof of claim on December 17, 2015.  *See generally* [ECF No. 75] (the "***NPE***"); [ECF No. 77] (amending the NPE).  On June 15, 2016 Julio Raygoza (the "***Debtor***") filed his Objection to the Notice of Post-Petition Mortgage Fees, Expenses, and Charges of PlainsCapital Bank contending that $505.80 in attorney's fees was untimely under Fed. R. Bankr. P. 3002.1(c) and $825.00 in attorney's fees were inappropriate because preparing a proof of claim is not something that requires the assistance of counsel.  *See generally* [ECF No. 81] (the "***Objection***").  This Court is presented with two questions, both of which are matters of first impression for this court.  First, when are fees, expenses and charges "incurred" for purposes of

Bankruptcy Rule 3002.1(c)?  Second, should the court allow PCB's fees, expenses and charges for the preparation and filing of a proof of claim in this particular case?

### Findings of Fact

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014.  To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

On October 5, 2015, Debtor filed his original petition under title 11, chapter 13 of the United States Code.[1]  [ECF No. 1].  Debtor filed his original Plan on October 19, 2015, which listed PCB as a secured creditor.  [ECF No. 16].  Debtor filed his Amended Plan on May 5, 2016, which provided PCB be paid as a conduit mortgage on its Allowed Claim. [ECF No. 60 at 3] (the "*Plan*").  PCB filed its objection to the Plan on May 9, 2016, claiming that the chapter 13 trustee's implementation of the Plan did not adequately serve the creditors because the chapter 13 trustee did not calculate interest from the date of the petition.  [ECF No. 65].  The court sustained PCB's objection to confirmation on August 3, 2016.  [ECF No. 101]

On May 25, 2016, PCB filed its NPE in the total amount of $2,789.51 including various fees for legal services performed throughout the bankruptcy case.  [ECF No. 75].  On May 26, 2016, PCB filed an amended NPE for the same amount.  [ECF No. 77].  Included in the NPE, were fees for legal services performed on November 6, 2015, for $250 and PACER fees for $5.80, as well as fees for services performed on November 9, 2015, for $250.  [ECF No. 77 at 3].

---

[1] Any reference to "*Code*" or "*Bankruptcy Code*" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

Additionally, the NPE contains charges for attorney's fees, totaling $825, for work performed in drafting and filing a proof of claim on behalf of PCB.  [ECF No. 77 at 4]; *see also* [Claim No. 4] (the "***POC***").  Further, the remainder of the NPE contains charges that were not objected to by the Debtor.  [ECF No. 81].  The NPE contains undisputed charges from January 2016 for $479.50 of attorney's fees and PACER fees.  [ECF No. 77 at 6].  Additionally, the NPE contains undisputed charges for $579.96 in attorney's fees and PACER fees from February 2016.  [ECF No. 77 at 7–8].  The NPE also contains an undisputed charge for $399.65 in attorney's fees and PACER fees from March 2016.  [ECF No. 77 at 9].  In total, the undisputed charges in the NPE equal $1,459.11.  *See* [ECF No. 77].  Thus, the total amount of attorney's fees sought in the NPE equals $2,789.91, rather than the $2,789.51 listed on the NPE.  *See id.*

On June 15, 2016, Debtor filed his Objection to the NPE.  [ECF No. 81].  In the Objection, Debtor alleged that some of the fees, expenses and charges PCB requested were improper under Rule 3002.1(c) because the NPE was not filed of record with the court within the required 180 days of when the fees, expenses and charges were "incurred."  *Id.* at ¶ 2.  Specifically, Debtor claimed that $505.80 of the fees and expenses were incurred from November 6, 2015 through and including November 20, 2015, leaving the cut-off date to timely file those fees from May 4, 2016 through and including May 7, 2016.  *Id.*; *see also* Fed. R. Bankr. P. 3002.1(c) (requiring service of notice within 180 days).  Debtor alleged that because the NPE was not filed until May 25, 2016, the $505.80 was wrongfully included as post-petition fees, expenses and charges and should be time barred pursuant to Rule 3002.1(c).  *Id.*  PCB filed its reply to Debtor's Objection, stating that the fees and expenses contained in the notice thereof are valid because they were incurred on the day the services were billed, not on the day the services were performed.  [ECF No. 82] (the "***Reply***").  PCB states that the customary

arrangement with its counsel is that it receives monthly statements from its lawyer that bills for past services and contends that the day it receives the bill is when the legal expense is incurred. *Id.* Accordingly, PCB argues that if the expenses were incurred on the day the services were billed, then the NPE was timely filed and within the statutory 180-day limit. *Id.*

Additionally, Debtor objected to the NPE on the basis that the portion of the fees attributed to the preparation and filing of the proof of claim on behalf of PCB were improper. [ECF No. 81 at ¶ 3]. Specifically, Debtor alleged in his Objection that PCB is not entitled to recover post-petition fees for work performed preparing and filing the POC because the services performed are merely ministerial and not legal in nature. *Id.* Debtor alleged that because filing a Proof of Claim does not require the assistance of counsel, it should be categorized as a ministerial act, making it unrecoverable by PCB. *Id.*

## II.    <u>Conclusions of Law</u>

### A. Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." This is a core matter for the purpose of 28 U.S.C. § 157, which provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core. Section 157 enumerates a non-exclusive list of core matters, which includes "matters concerning the administration of the estate" and "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(A-B). The decision to grant or deny a Notice of Post-Petition Fees, Expenses and Charges pursuant to Fed. R. Bankr. P. 3002.1 falls squarely within the statutory definition of a core matter. § 157(b)(2)(B). Therefore, jurisdiction is proper pursuant to the statutory provisions governing bankruptcy courts.

This Court may only hear a case in which venue is proper. 28 U.S.C. §§ 1408 and 1409. Section 1408 designates that venue is proper wherever "the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity" is located. In his original petition, Debtor designated his domicile and residence as Brownsville, Texas. Therefore, venue is proper.

## B. Constitutional Authority to Enter a Final Order

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015) (holding that Article III will be satisfied where the parties to a case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments). The Supreme Court held that § 157 violated Article III to the extent that it authorized final judgments on certain matters. *Id.* at 495–96. The Court reasoned that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality because bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges. *Id.* at 500–01. This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy. *See* 28 U.S.C. § 157.

The instant case requires this Court to determine whether post-petition legal fees, expenses and charges were "incurred" from the date the services were performed or from the date they were billed, which solely concerns bankruptcy law. *See* Fed. R. Bankr. P. 3002.1(c); *see also* § 157(b)(2)(B). Further, this Court must determine whether the legal fees, expenses and

charges incurred by PCB in the preparation and filing of a Proof of Claim by its counsel in this particular case are recoverable under Rule 3002.1, which falls squarely into the realm of bankruptcy. *See* Fed. R. Bankr. P. 3002.1(c). Therefore, this Court possesses constitutional authority to enter a final order and judgment with respect to the core matters at bar.

## C. Post-Petition Fees, Expenses or Charges are Incurred on the Date the Services Were Rendered

The first issue before this Court is when is a fee, expense, and/or charge actually incurred for purposes of Rule 3002.1? A creditor that has a claim for post-petition fees, expenses and/or charges may file a notice pursuant to Fed. R. Bankr. P. 3002.1(c). To wit, Rule 3002.1(c) provides that:

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

*Id.* In order to be timely, the creditor's notice for the fees, expenses or charges must be filed and served within 180 days from the day the creditor incurred the expense. *See id.* However, Rule 3002.1 does not expound on when exactly an expense is *incurred*. *See id.* Moreover, the Bankruptcy Code does not provide a definition for the meaning of "incurred" or "incur" as it is referenced within other provisions. 11 U.S.C. § 101.

Several bankruptcy courts throughout the country have postulated when an expense is actually incurred. *In re Roundwood Corp.*, 72 B.R. 296, 299 (Bankr. D.S.C. 1987) (evaluating whether a creditor's administrative expense was "'incurred" during the chapter 11 case or after conversion to chapter 7"). The *Roundwood* court conceded that the Code neither conclusively defines "incur" nor indicates exactly when an expense is "incurred." *Id.* The *Roundwood* court

noted the importance of two specific dates when determining whether an expense was incurred during the course of the debtor's chapter 11 bankruptcy: the date the finance agreement was agreed upon and executed, and the date the payment became due and payable. *Id.* As both dates fell within the timeline of the chapter 11 case, the *Roundwood* court held that the expense was incurred during the bankruptcy case and failed to make the distinction of which date was determinative. *Id.* at 299–300.

The Fifth Circuit analyzed the term "incurred" in the context of an attempt to avoid a preferential transfer under § 547(b) of the Bankruptcy Code. *Matter of Emerald Oil Co.*, 695 F.2d 833, 835 (5th Cir. 1983) (determining whether the transfer was made within forty-five days after the debt was "incurred" under § 547(c)(2)). Affirming the bankruptcy court, the Fifth Circuit held that the debtor incurred the debt when the contractual work was completed because the debtor became obligated to pay on that date. *Id.* at 834–35. The Fifth Circuit found the definition of "incurred" as the date the debtor becomes liable to pay a debt to be in accord with the definitions of "claim" and "debt" under the Bankruptcy Code. *Id.* at 837; *see* § 101(4) (defining "claim" as the "contingent, unmatured, and disputed rights to payment"; § 101(11) (defining "debt" as "liability on a claim"). Further, the Fifth Circuit reasoned that "[t]he date of invoicing rather than the date of debt-obligation would leave to the creditor the discretion to determine the date the obligation was incurred." *Matter of Emerald Oil Co.*, 695 F.2d at 837; *see also In re Ray W. Dickey & Sons, Inc.*, 11 B.R. 146, 147–48 (Bankr. N.D. Tex. 1980) (holding that a debt is "incurred" when a person uses a utility and consumes the resource, not when they receive an invoice) (citing COLLIER ON BANKRUPTCY ¶ 5-547 (Matthew Bender, 15th ed. 2011)).

In the Southern District, our sister court held that an expense is incurred when a debtor takes on a legal obligation to pay for purposes of administrative expenses subject to § 726(b). *In*

*re Simbaki, Ltd.*, 2015 WL 1593888, at *6 (Bankr. S.D. Tex. Apr. 6, 2015) (holding that the debtor incurred the obligation to pay each month on the first when the rent was due under the term lease).   Further, the *Simbaki* court looked to Black's Law Dictionary and Webster's Dictionary to appropriately define "incur."   *Id.*; *see Incur*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "incur" as "to suffer or bring on oneself (a liability or expense)"); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 611(9th ed. 1990) (defining "incur" as "to become liable or subject to").   Following *Simbaki*, this court previously analyzed the meaning of incurred under Rule 3002.1(c) specifically.   *In re Trevino*, 535 B.R. 110, 134 (Bankr. S.D. Tex. 2015) (Isgur, J.) (noting that "an expense is incurred as soon as there is a liability to pay…").   Acknowledging that a creditor could forfeit its right to repayment if they file late, the *Trevino* court found that "the plain language of Rule 3002.1(c) encourages creditors to file notices as quickly as possible." *Id.*   The *Trevino* court held that an expense is incurred when the obligation to pay arises, noting that a "creditor cannot afford to wait . . . before filing a 3002.1(c) notice."   *Id.*

       This Court is presented with two potential alternatives for when post-petition legal fees, expenses and costs were "incurred" under Rule 3002.1(c) in this matter: the date the legal services were performed, or the date PCB was invoiced for the legal fees, expenses, and costs. Determining the date the post-petition fees were incurred is crucial because if any legal services were performed or expenses and/or costs outside the 180-day limit then PCB relinquished the right to the $505.80 in legal fees and expenses in question by failing to timely file its notice.   The instant case is comparable to *Matter of Emerald Oil Co.*, where the Fifth Circuit held that contractual work fees were incurred at the time the work was performed.   *See* 695 F.2d at 837. Charges for legal services in this case are comparable to the contractual work charges in *Emerald* because both cases involve charges stemming from completed services.   *See id.* at 835–36.

Moreover, *Emerald* considered both the date the services were performed and the date the client was billed for the services. Following the logic of the Fifth Circuit, PCB had a legal obligation to pay its fees, expenses and charges at the time the lawyer performed any legal services, not when the lawyer issued his invoice. *Compare* [ECF No. 81] *and* [ECF No. 82] *with Matter of Emerald Oil Inc.*, 695 F.2d at 837. Here, a portion of the NPE that is in dispute, accounted for legal services performed and expenses and costs incurred from November 6, 2015, through and including November 20, 2015, for a total of $505.80. [ECF No. 77 at 3]. Under *Emerald*'s reasoning, the deadline to file a notice of post-petition fees, expenses and charges elapsed, as early as May 4, 2016 and at the latest May 18, 2016, respectively, because at that point the 180-day period from when the contractual work was performed had elapsed. *Id.* The NPE was not filed until May 25, 2016, and was amended the following day. [ECF Nos. 75 and 77].

PCB argues that Debtor became legally obligated to pay the expenses on a date of their lawyer's choosing each month, rather than the date the legal services were performed. [ECF No. 77]. PCB alleges that it is customary for PCB's lawyer to invoice PCB once a month for legal services, where invoices are due 30 days after the invoice date. [ECF No. 82]. If this Court agreed with PCB, the $505.80 in post-petition legal fees, expenses and charges would not be untimely under Rule 3002.1(c). At first blush, PCB may argue that this case is comparable to *Simbaki* because PCB's lawyers customarily billed once a month, the month after performing legal services, similar to the monthly billing arrangement under the term lease in *Simbaki*. *See* [ECF No. 82]; *see also In re Simbaki*, 2015 WL 1593888, at *6. However, in *Simbaki* the debtor's legal obligation arose when the rent was invoiced, at the beginning of the month, whereas in the current case PCB's legal obligation arose when the attorney performed legal services. *Compare* [ECF No. 81] *and* [ECF No. 82] *with In re Simbaki*, 2015 WL 1593888, at

*6 (categorizing a lease as an installment contract, "in which a month's use of the lessor's property is set off by a month's worth of rent") (quoting *F.D. Stella Prods. Co. v. Scott*, 875 S.W.2d 462, 466 (Tex. App. 1994)).   PCB's argument is a non se quitur.

In conclusion, following the reasoning of the Fifth Circuit and our sister court an expense is incurred when a legal obligation to pay the debt arises, which is the date the service is rendered.  Statutory language is "determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole."  *Yates v. United States*, 135 S. Ct. 1074, 1081–82 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also King v. Burwell*, 135 S. Ct. 2480, 2497 (2015) (Scalia, J., dissenting) ("I wholeheartedly agree with the Court that sound interpretation requires paying attention to the whole law, not homing in on isolated words or even isolated sections.  Context always matters.").  Both the dictionary definition and the statutory context establish that an expense is "incurred" there is a legal obligation to pay the debt.  The NPE was filed outside the 180-day limit imposed by Rule 3002.1(c) for the legal fees incurred in November 2015.  *See* [ECF Nos. 75 and 77].  Therefore, this Court finds that the NPE is untimely in regards to the November 2015 legal fees expenses and costs, and Debtor's objection to the $505.80 in fees, expenses and charges should be sustained.

### D.  PlainsCapital Bank Cannot Recover Its Entire Post-Petition Fees, Expenses & Charges for the Drafting and Filing of a Proof of Claim in This Particular Case

Additionally, the NPE seeks additional attorney's fees in the amount of $825.00 for the preparation and filing of the POC on PCB's behalf.  [ECF Nos. 75. 77].  There is considerable debate among bankruptcy courts as to whether services completed by attorneys drafting proofs of claim for their clients are considered legal acts warranting attorney's fees.  *In re Rangel*, 408 B.R. 650, 665–66 (Bankr. S.D. Tex. 2009).  The *Rangel* court held that drafting a proof of claim

"requires an examination of relevant law."   408 B.R. at 666 (holding that attorney fees "for preparation of the proof of claim and the additional services rendered is reasonable) (*quoting In re Moye*, 385 B.R. 885, 892 (Bankr. S.D. Tex. 2008)); *see also In re Powe*, 278 B.R. 539, 555–56 (Bankr. S.D. Ala. 2002) (finding that preparing a proof of claim is not always a ministerial act because an attorney must consider if the creditor is oversecured, the existence of a co-debtor, proper filing procedures, and the existence of prepetition fees or costs).   Further, the *Rangel* court found that a creditor's failure to follow the instructions on a proof of claim would deprive "the claim of prima facie validity."   408 B.R. at 666 (citing *In re Gilbreath*, 395 B.R. 356, 361–65 (Bankr. S.D. Tex. 2008)); *see also* Fed. R. Bankr. P. 3001(f); *In re Tran*, 369 B.R. 312, 315 (S.D. Tex. 2007).   Moreover, if any claim is not asserted in the filed proof of claim, that claim is barred.   *In re Nat'l Gypsum Co.*, 139 B.R. 397, 412 (Bankr. N.D. Tex. 1992).   Relying on the "serious and far-reaching implications of failing to file a proof of claim correctly," the *Rangel* court held that preparing and filing a proof of claim is more than a ministerial act.   408 B.R. at 666.   Noting Fifth Circuit precedent, the court acknowledged that reasonable attorney's fees for preparing a fee application are permissible.   *Id.* at 472 (citing *In re Braswell Motor Freight Lines, Inc.*, 630 F.2d 348, 351 (5th Cir. 1980); *see also In re Velazquez*, 660 F.3d 893, 899–900 (5th Cir. 2011).

Conversely, several bankruptcy courts regard the drafting and filing of a proof of claim as nothing more than a ministerial act, which does not require an attorney.   *In re Allen*, 215 B.R. 503, 504 (Bankr. N.D. Tex. 1997) (acknowledging that "a creditor is free to have an attorney to prepare the claim, but the cost of that preparation cannot be passed on to the debtor without specific authorization from the court"); *see also In re Madison*, 337 B.R. 99, 105 (Bankr. N.D. Miss. 2006) (finding that attorney services are "unnecessary for the preparation and filing of a

proof of claim, which is basically a mathematical computation"); *In re Hart Ski Mfg. Co.*, 5 B.R. 326, 327–28 (Bankr. D. Minn. 1980) (holding that the purpose of a proof of claim is "to provide the trustee or the debtor-in-possession with adequate notice of the claim against the estate.  The filing of a proof of claim is a ministerial act which does not alter the legal and equitable relationships involved").  An act is ministerial when it "involves obedience to instructions or laws instead of discretion, judgment, or skill."  *Ministerial*, BLACK'S LAW DICTIONARY (10th ed. 2014).  A proof of claim is "a written statement setting forth a creditor's claim. . . [and] shall conform substantially to the appropriate Official Form."  Fed. R. Bankr. P. 3001(a).  By its statutory definition, a traditional proof of claim requires a written statement of the creditor's claim, rather than detailed legal reasoning.  *See In re Allen*, 215 B.R. at 504; *but see In re Rangel*, 408 B.R. at 666.  However, in order to substantially conform to the appropriate form, the attorney obeys the instruction of both the law and the form in order to properly file a proof of claim with this Court.  *See id.* (emphasizing the importance of following instructions for a proof of claim).

Bankruptcy procedure allows either the creditor or the creditor's agent, such as the creditor's attorney, to execute a proof of claim.  Fed. R. Bankr. P. 3001(b).  Moreover, individual creditors are granted authority to "(1) appear in a case under the Code and act either in the entity's own behalf or by an attorney authorized to practice in the court, and (2) perform any act not constituting the practice of law, by an authorized agent, attorney in fact, or proxy."  Fed. R. Bankr. P. 9010(a).  The Fifth Circuit found that administrative functions, such as filing a proof of claim, undertaken by a non-attorney did not constitute the unauthorized practice of law.  *State Unauthorized Practice of Law Comm. v. Paul Mason & Assoc.*, 46 F.3d 469, 470–71 (5th Cir. 1995).  The Fifth Circuit determined that the challenged activities, which included the filing of a

proof of claim "have long been recognized by the bankruptcy courts as administrative functions that can be performed by authorized non lawyer agents without offending rule 9010(a)'s prohibition against the unauthorized practice of law." *Id.* at 472; *see also In re Boyd*, 2012 WL 370093, at *2 (Bankr. S.D. Tex. Feb. 3, 2012) (holding that "purely administrative acts, such as a filing a proof of claim, are not the practice of law").

This Court agrees, in part, with the *Rangel* court in that preparing a proof of claim does require legal analysis to a certain degree. *See* 408 B.R. at 666. Filing a proof of claim binds a creditor to the bankruptcy court's jurisdiction "at least as to a determination of the validity and amount of the claim." *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1054 (5th Cir. 1986). Courts often consider "filing a proof of claim [a]s tantamount to filing a civil complaint." *In re Vitro Asset Corp.*, 539 B.R. 108, 115 (N.D. Tex. 2015) (citing *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552 (5th Cir. 1985)); *see also Nortex Trading Corp. v. Newfield*, 311 F.2d 163, 164 (2d Cir. 1962). Furthermore, every proof of claim is signed and certified before the court that the claims are warranted in fact and law and that evidentiary support exists. Fed. R. Bankr. P. 9011. An attorney or entity that violates Rule 9011 is subject to sanctions. *Id.* This Court will not discourage creditors from retaining competent counsel as PCB did in this case. However, this Court also finds merit in the *Allen* court's reasoning. *See* 215 B.R. at 504. Although preparing a proof of claim does utilize legal work, it involves ministerial aspects as well, such as filling out the required form, gathering information, and computing the claim amount. *See In re Madison*, 337 B.R. at 105. As indicated by the Fifth Circuit, this Court finds that the drafting and filing of a proof of claim is partially an "administrative function" that does not constitute the practice of law, which in turn cannot be subject to attorney's fees. *See Paul Mason & Assoc.*, 46 F.3d at 472. Therefore, this Court will allow a portion of the December

2015 attorney's fees for work on the POC, but not the entire $825.00 noticed. [ECF No. 77 at 4]. Here, PCB's attorney invoiced 3.30 hours of attorney time for work on the POC, totaling $825.00. *Id.* Based on the evidence, or lack thereof, presented at the hearing although PCB chose to utilize an attorney in this case, a paralegal, legal assistant, or even an officer of PCB could have taken part in preparing and filing the POC without billing over three hours of attorney time against the Debtor. *See In re Allen*, 215 B.R. at 504. Thus, this Court will only grant a reasonable amount of attorney's fees for work on the POC in December 2015 and deny the remainder requested in the NPE.

The Fifth Circuit compels bankruptcy judges to follow a three-step analysis in granting fees to secured creditors pursuant to § 506(b): "(1) determine the nature and extent of the services supplied by the attorney with reference to the time and labor records submitted; (2) ascertain the value of the services; and (3) briefly explain the findings and the reasons upon which the award is based." *In re Pan Am. Gen. Hosp. LLC*, 385 BR. 855, 865 (Bankr. W.D. Tex. 2008) (citing *In re Hudson Shipbuilders*, 794 F.2d at 1058)). "Reasonableness of attorney's fees should be determined on a case by case basis." *In re Hight*, 393 B.R. 484, 506 (Bankr. S.D. Tex. 2008). Additionally, bankruptcy courts must evaluate attorney services rendered "in light of what was 'reasonable at the time.'" *In re Palacios*, 2016 WL 361569 (Bankr. S.D. Tex. Jan. 27, 2016) (quoting *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 276–77 (5th Cir. 2015)). In *Johnson v. Georgia Highway Express, Inc.*, the Fifth Circuit established the following factors for bankruptcy courts to weigh in determining the reasonableness of attorney's fees: (1) time and labor required; (2) the novelty of the question; (3) the requisite skill required to perform the legal services; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the

amount in controversy and the results of the legal services; (9) the attorney's experience; (10) the case's "undesirability;" (11) the nature of the relationship between the attorney and client; and (12) awards in similar cases.  488 F.2d 714, 717–19; *see also Andrews & Kurth L.L.P. v. Family Snacks (In re Pro-Snax Distribs.)*, 157 F.3d 414, 425 (5th Cir. 1998), *overruled by In re Woerner*, 783 F.3d at 277 (overruling the standard set *In re Pro-Snax*, which held that attorney's fees may only be awarded for services that resulted in a tangible, material benefit to the estate, in favor of the "reasonable at the time" standard for determining attorney's fees).

This Court looks to the NPE and the evidence presented during the evidentiary hearing to determine the nature and extent of the services PCB's Counsel provided.  [ECF No. 77]. Regarding the December 2015 charges, PCB's Counsel invoiced PCB for 3.30 hours of attorney time, totaling $825.00, for work on the POC.  *Id.* at 4.  PCB's Counsel alleges time spent working on the POC, reviewing and sending emails, completing the POC, and e-filing it.  *Id.*   In this case, there is no evidence that any legal work was done outside the scope of drafting and filing the POC on behalf of PCB.  *Id.*  None of the itemized work listed on the NPE indicates that any legal work was done outside the scope of preparing and filing the POC by PCB's counsel. *Id.*  Further, no evidence was presented at the August 3, 2016 hearing to suggest that PCB's Counsel engaged in detailed legal reasoning in drafting and filing the POC.  However, this Court acknowledges that on occasion preparing a proof of claim may require legal work and analysis beyond typical drafting and filing, which may allow additional attorney fees.  *See In re Madison*, 337 B.R. at 105 (observing reasonable attorney's fees may be allowed "for legal work outside the scope of the preparation and filing of a proof of claim. . . . [and] the Court would consider granting such fees, assuming they had been properly itemized and adequately disclosed to interested parties within the creditor's proof of claim").  Based on the lack of evidence presented,

this Court finds that the nature and extent of PCB's Counsel's services include one-hour of legal work in conducting the necessary legal services in preparing the POC. *See* [ECF No. 77 at 4]. The remaining 2.30 hours PCB's Counsel noticed in the NPE fall under the ministerial acts necessary to file a proof of claim, such as review emails, revising, and e-filing. *Id.* Therefore, as drafting and filing a proof of claim is partially administrative work that non-lawyers may undertake, without evidence of actual legal work PCB is not entitled to the entirety of the December 2015 attorney's fees totaling $825.00 for drafting and filing the POC. *See Paul Mason & Assoc.*, 46 F.3d at 472.

According to the invoice attached to the NPE, PCB's Counsel charges $250.00 per hour for work on proof of claims. [ECF No. 77 at 4]. Thus, this Court ascertains that the hour of legal services PCB's Counsel spent on the POC is valued at $250.00. Therefore, this Court will grant PCB to recover $250.00 of the December 2015 attorney's fees, but deny the remaining $575.00. In evaluating the *Johnson* factors, this Court first considers the time and labor required. *See* 488 F.2d at 717. As discussed above, "it is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers." *Id.* In evaluating the sparse evidence presented, this Court finds that this factor weighs in favor of lowering the amount of requested attorney's fees from 3.30 hours to one hour. *See* [ECF No. 77 at 4]. The novelty and difficulty of the question weighs toward awarding less than $825.00 because preparing and filing a proof of claim is a standard filing of which creditor's attorneys, such as PCB's Counsel, have substantial familiarity. This Court must also evaluate the "skill requisite to perform the legal service properly." *Johnson*, 488 F.2d at 718. Although this Court finds that preparing and filing a proof of claim does require legal work, Rule 9010 allows non-lawyers to prepare and file a

proof of claim, which indicates that legal training is not a pre-requisite to properly file a proof of claim. *See* Fed. R. Bankr. P. 9010. Thus, this factor weighs in favor of a lower award of attorney's fees.

Furthermore, there is no evidence that preparing and filing the POC precluded PCB's Counsel from other legal employment. *See Johnson*, 488 F.2d at 718. According to the NPE, $250.00 is the customary, fixed fee charged by PCB's Counsel for all work related to this case, including court appearances. *See* [ECF No. 77]. Considering that $250.00 is Counsel's customary hourly rate on PCB's claim, this Court finds that this weighs in favor of finding $250.00 to be a reasonable award of attorney's fees. PCB presented no evidence that pressing time limitations were imposed that would justify attorney's fees totaling $825.00. In considering the amount involved in the action, the POC in question is seeking $101,125.26 on behalf of PCB. [Claim No. 4] secured by the Debtor's Homestead valued at $122,634.00 [ECF No. 14]. The substantial nature of this claim weighs toward awarding PCB reasonable attorney's fees. This Court must also consider "the experience, reputation, and ability of the attorneys" when determining reasonable attorney's fees. *Johnson*, 488 F.2d at 718–19. PCB's Counsel is an experienced practitioner, which tends to weigh toward awarding reasonable attorney's fees. There is no evidence that this case is undesirable in any way, thereby weighing toward lower attorney's fees. *See id.* at 719. Although this Court may consider Counsel's professional relationship with PCB, there is no evidence on the record that the fee was varied based on the professional relationship. Finally, this Court looks to awards of attorney's fees in similar cases, which range from $150 to $275. *See In re Velazquez*, 660 F.3d at 895 (approving $150 in fees relating to preparing and prosecuting a fee application); *In re Rangel*, 408 B.R. at 662 (seeking $200 in fixed fees for preparing and filing a proof of claim); *In re Moye*, 385 B.R. at 892

(concluding $200 in attorney's fees for preparing a proof of claim is reasonable); *In re Powe*, 278 B.R. 539, 555 (Bankr. S.D. Ala. 2002) (finding a flat fee of $225–$275 to be reasonable for *all* work related to a creditor's claim). Here, PCB's Counsel charged $825.00 for preparing and filing a proof of claim. [ECF No. 77 at 4]. The stark variance of attorney's fees claimed in this case compared to the typical award, combined with the lack of evidence regarding Counsel's legal work, tend to weigh toward finding $250.00 in attorney's fees to be a reasonable award. Despite the substantial amount of PCB's claim and Counsel's experience, this Court finds that the Johnson factors support awarding a lesser amount of attorney's fees than requested in the NPE, particularly due to the lack of evidence as to the legal work Counsel actually performed. Therefore, this Court holds that one hour of attorney time, billed in this case at $250.00, is a reasonable fee for preparing and filing the proof of claim based on the totality of circumstances.

### III.   Conclusion

PlainsCapital Bank, as a secured creditor in this case, came before this Court seeking fees, expenses and charges for services provided from November 6, 2015 through and including November 20, 2015, and attorney's fees for preparing and filing the Proof of Claim from December 10, 2015 through and including December 17, 2015. *See generally* [ECF No. 77]. The Debtor objected to these fees, expenses and charges as being both untimely and inappropriate, respectively. *See generally* [ECF No. 81]. This Court considered both the arguments and evidence presented at the evidentiary hearing and the filings of the parties. First, this Court determines that a fee, expense or charge is incurred when there first is a legal obligation to pay the debt, not when an invoice is issued. In the instant case, the expenses were incurred when PlainsCapital Bank's Counsel performed legal services and/or incurred an expense and/or charge. Second, PlainsCapital bank is not entitled to the entirety of attorney's

fees requested via the Notice of Post-Petition Fees, Expenses, or Charges for the preparation and filing of the Proof of Claim in this particular case because there is no evidence that PlainsCapital Bank's Counsel utilized legal analysis and reasoning beyond the minimally necessary legal work to prepare and file the Proof of Claim.   For the foregoing reasons, this Court finds that PlainsCapital Bank is not entitled to recover its attorney's fees, expenses and charges sought for work performed in November 2015 because the Notice of Post-Petition Fee, Expense or Charge was filed with the Court more than 180-days after the expenses were incurred.   Further, this Court finds that PlainsCapital Bank is entitled to $250.00 in attorney's fees for Counsel's legal work in preparing the Proof of Claim, but is not entitled to the remaining $575.00 because there is no evidence that Counsel utilized any legal analysis or expertise beyond the mere ministerial acts required to prepare and file the Proof of Claim.   Although PlainsCapital Bank filed the Notice of Post-Petition Fees, Expenses, and Charges requesting $2,789.51, as noted above, the total of itemized attorney's fees expenses and charges is $2,789.91.  *See* [ECF No. 77].  The total of undisputed attorney's fees, expenses and charges itemized by PlainsCapital Bank is $1,459.11. *Id.*  Therefore, the Debtor's Objection is **SUSTAINED** in part and the Notice of Post-Petition Fee, Expense and Charge is **DENIED** to the extent of $1,080.80 and **GRANTED** to the extent of $1,709.11.

An Order consistent with this Memorandum Opinion shall be entered simultaneously.

**SIGNED 09/01/2016.**

_____

**Eduardo V. Rodriguez**
**United States Bankruptcy Judge**